

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed August 11, 2009                                    United States Bankruptcy Judge

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 09-41503-RFN |
| RODNEY ALLEN MEADOWS, § | |
| § | CHAPTER 13 |
| Debtor. § | |

## MEMORANDUM OPINION

Rodney Allen Meadows is a chapter 13 debtor. According to his form 22C, his annualized income is $78,950.16. This amount places him in the category of an above-median-income earner for the purposes of 11 U.S.C. § 1325(b).

After calculating his deductions in part IV of form 22C, the debtor has monthly disposable income in the amount of -$258.44. By contrast, when calculated pursuant to schedules I and J, the debtor's net monthly income is $102.22.

The debtor has proposed a plan pursuant to which he will pay $100 per month for eleven months. This will leave a creditors' pool of zero dollars for creditors holding $82,433.24 in unsecured claims.

The chapter 13 trustee has objected to confirmation of the debtor's plan. The trustee takes no issue with the debtor's calculation of his income and expenses. Indeed, the trustee agrees that under section 1325(b), the debtor has a projected disposable income of zero. Nevertheless, the trustee contends that the plan cannot be confirmed because it fails to provide for a plan term of sixty months, which, according to the trustee, is mandated by 11 U.S.C. § 1325(b)(4). That section provides that unless allowed unsecured claims are paid in full, the debtor must propose a plan with an "applicable commitment period" of not less than five years. *Id.*[1] Thus, the trustee argues that the "applicable commitment period" is a temporal requirement, with which the debtor has failed to comply.

The debtor rejects the trustee's argument on two grounds. First, he contends that the "applicable commitment period" is not a temporal requirement at all, but merely a multiplier used to determine the pool of money payable to unsecured creditors. Alternatively, the debtor contends that even if the phrase "applicable commitment period" were construed to be temporal, it does not apply in cases where the debtor has no projected disposable income.

---

[1] For purposes of this subsection, the "applicable commitment period" –

A) subject to subparagraph (B), shall be –
   i) 3 years; or
   ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than –
      I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;
      II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or
      III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $575 per month for each individual or excess of 4; and
B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

11 U.S.C. § 1325(B)(4).

This issue has been well-vetted in the courts. Three lines of authorities have developed. The first line of authorities holds that the phrase "applicable commitment period" is temporal and, thus, requires above-median-income debtors to pay their creditors in full or commit to a plan whose term is sixty months in length. *In re Nance,* 371 B.R. 358, 369 (Bankr. S.D. Ill. 2007); *In re Grant*, 364 B.R. 656, 667 (Bankr. E.D. Tenn. 2007); *In re Slusher*, 359 B.R. 290, 305 (Bankr. D. Nev. 2007); *In re Casey*, 356 B.R. 519, 527 (Bankr. E.D. Wash. 2006); *In re Schanuth*, 342 B.R. 601, 607 (Bankr. W.D. Mo. 2006).

The second line of authorities adopts the multiplier approach that the debtor urges this court to follow. The advocates of this approach say that the function of the "applicable commitment period" is to provide a factor by which the debtor's projected disposable income must be multiplied in order to determine the amount of the unsecured creditors' pool. *In re Lopatka*, 400 B.R. 433, 440 (Bankr. M.D. Pa. 2009); *In re Swan*, 368 B.R. 12, 27 (Bankr. N.D. Cal. 2007); *In re Mathis*, 367 B.R. 629, 634 (Bankr. N.D. Ill. 2007); *In re Brady*, 361 B.R. 765, 776 (Bankr. D. N.J. 2007); *In re Fuger*, 347 B.R. 94, 95 (Bankr. D. Utah 2006). Under this approach, the function of the "applicable commitment period" is fulfilled as long as the debtor proposes a plan that pays the pool amount, even if the plan term is less than sixty months and the plan does not satisfy claims in full.

The third line of cases focuses upon the language of section 1325(b)(1)(B). It notes that that section only requires that the debtor's projected disposable income during the "applicable commitment period" be applied to payments to unsecured creditors. 11 U.S.C. § 1325(b)(1)(B). According to this line of authorities, if the debtor has no

projected disposable income, the concept of an "applicable commitment period" never comes into play. *See In re Kagenveama*, 541 F.3d 868, 876 (9th Cir. 2008); *Musselman v. eCast Settlement Corp. (In re Musselman)*, 394 B.R. 801, 814 (E.D.N.C. 2008); *In re Davis*, 392 B.R. 132, 148 (Bankr. E.D. Pa. 2008); *In re Alexander*, 344 B.R. 742 (Bankr. E.D.N.C. 2006).

Notwithstanding their disparate results, the foregoing cases have some similarities. First, they typically purport to follow the "plain" or "natural" language of section 1325(b). *In re DeThample*, 390 B.R. 716, 722 (D. Kan. 2008); *See In re Davis*, 392 B.R. 132, 138 (Bankr. E.D. Pa. 2008). Second, they find support for their respective positions in BAPCPA's legislative history. *See In re Davis*, 392 B.R. at 137-38. And, third, they frequently point to incongruous results that would flow from adopting from a contrary ruling. *Id*.

While these authorities reach different results, they do so in an intellectually honest manner. The courts that have addressed this issue have made logical, compelling arguments supporting their respective positions. By deciding to follow one line of authorities, this court does not purport to reject the logic of the other two, but merely adopts that reasoning that most comports with its own understanding of section 1325(b)(4) and its function.

In that spirit, this court agrees with that line of cases that holds that the phrase "applicable commitment period" is a temporal requirement. It does so not only because it believes that this is the most intuitive reading of section 1325(b)(4), but because in this court's experience, such a construction has practical application in implementing one of Congress's overarching purposes in enacting BAPCPA.

It is axiomatic that by enacting BAPCPA, Congress sought to force "can-pay" debtors to pay something to their unsecured creditors. 151 CONG. REC. S2470 (March 10, 2005). A fundamental premise of BAPCPA is that creditors will fare better in chapter 13 than in chapter 7. Thus, BAPCPA directs can-pay debtors, now defined as "above-median-income debtors," into chapter 13 rather than permitting them to file under chapter 7. *In re Tate*, No. 08-60953, 2009 WL 1608890 at *1 (5th Cir. 2009).

One is free to question whether or not BAPCPA has accomplished the purpose of forcing can-pay debtors to pay more. *In re Alexander*, 344 B.R. 742, 747-48 (E.D. N.C. 2006) (citing Marianne B. Culhane & Michaela M. White, *Catching Can-Pay Debtors: Is the Means Test the Only Way?*, 13 AM. BANKR. INST. L. REV. 655, 681 (2005)). Nevertheless, it can hardly be disputed that such a purpose exists. In this court's opinion, viewing the phrase "applicable commitment period" as a temporal requirement is integral to implementing this congressional goal. If the "applicable commitment period" is a temporal requirement, then an above-median-income debtor must pay his debts in full or subject his net income to the claims of his creditors for a period of sixty months following the filing of his bankruptcy petition.

Opponents of the temporal approach would argue, among other things, that the debtor's net income remains exposed to claims of creditors under their analysis as well, but for a period of time that might be less than sixty months. While this is true, the concept of a variable plan period for an above-median-income debtor who fails to pay his creditors in full runs counter to this court's reading of section 1325(b)(4). While reasonable minds may differ, this court reads that section to present such a debtor with two – and only two – alternatives. He may pay his creditors in full, in which event he

may adopt any plan period up to a maximum of sixty months. Or, alternatively, if he cannot pay his creditors in full, he must submit to a plan period for a full sixty months.

Not only does this interpretation comport with what this court understands Congress to have intended by its enactment of an "applicable commitment period" in the first place, but it has practical application in many chapter 13 cases. The first and most obvious impact of a temporal requirement is its potential to preserve for the benefit of creditors upswings in the debtor's net income during the sixty-month term. Its impact is not limited, however, to enhancements of post-petition net income. For example, it is not unusual for a debtor to overpay his income taxes while he is in chapter 13. When he does so, he is entitled to a tax refund. Under this court's local procedures, tax refunds due to a chapter 13 debtor are paid to the chapter 13 trustee. The trustee is authorized to apply up to $2,000 of the refund to any delinquency in the debtor's case. Any portion of the first $2,000 not so applied by the trustee is forwarded by the trustee to the debtor. But, any refund in excess of $2,000 may be applied by the trustee to the debtor's allowed unsecured claims, in which event the debtor's plan is deemed modified accordingly. In some cases, tax refunds are the only funds paid to unsecured creditors during the course of a chapter 13 plan.

If the court were to adopt the debtor's suggested approach, the debtor would receive his discharge twelve months after filing his petition, assuming that he made all of his plan payments and otherwise complied with requirements of section 1328. He would receive a discharge even though his plan paid nothing to unsecured creditors holding $82,433.24 in claims. If in month thirteen the debtor received a tax refund in excess of $2,000, no portion of that refund would be available to satisfy the claims of creditors

6

even though the refund was, in essence, income earned and deferred during the term of the debtor's plan. This result is not only unfair to creditors, but is at odds with this court's understanding of section 1325(b)(4)'s manifest purpose. For these reasons, this court holds that the "applicable commitment period" in section 1325(b)(4) is a temporal requirement.

This does not dispose of the debtor's alternative argument, which is that even if the "applicable commitment period" is temporal, it simply does not apply in cases in which the debtor has no projected disposable income. While the court concedes that section 1325(b)(1)(B) can be read to support such an argument, it disagrees with it. First, the same reasons that prompt the court to view section 1325(b)(4) as imposing a temporal requirement persuade it to reject such a construction. Second, the debtor's construction would mean that the existence of an "applicable commitment period" in clause (b)(4) depends upon a positive projected disposable income in clause (b)(1). However, clauses (b)(1) and (b)(4) are independent clauses. It is an accepted rule of construction that independent clauses have coordinate value. *McLeod v. Nagle*, 48 F.2d 189, 191 (9th Cir. 1931). This rule is violated if clause (b)(4) is made dependent upon clause (b)(1). Consequently, this court concludes that an "applicable commitment period" applies even in those cases in which the debtor has a projected disposable income of zero.

One criticism of requiring an "applicable commitment period" in cases where there is no projected disposable income is that it can require sixty-month plans in cases where there is little, if any, prospect of future increases in projected disposable income. Such a fact situation was presented in *In re Davis*, 392 B.R. 132 (Bankr. E.D. Pa. 2008). There, because the debtors derived their income from retirement pensions, social security,

7

and one part-time job, it was safe to predict that there would be no improvement in their ability to generate a positive projected disposable income. *Id*. at 133-34.

This concern is addressed by two code provisions. The first is section 1329(b), which permits the debtor to seek modification of his plan after confirmation in order to reduce the time for payments. 11 U.S.C. § 1329(b)(2). Admittedly, this is not an efficient procedure, but that fact does vitiate this court's reading of section 1325(b)(4).

Moreover, section 1325(b)(4)'s temporal requirement can be avoided altogether if no party objects to confirmation. After all, subsection (b) of section 1325 only applies if an objection to confirmation is filed. 11 U.S.C. § 1325(b)(1). Objections to confirmation, like all other filings in contested matters, are subject to Rule 9011 of the Federal Rules of Bankruptcy Procedure. Accordingly, they must not be filed for the purpose of harassing the debtor. In cases where there is little, if any, prospect for generating positive projected disposable income, creditors must be mindful of Rule 9011's strictures. The debtor has not argued that Rule 9011 is implicated here, and the court finds that it is not.

## Conclusion

The debtor's plan does not propose to pay creditors in full. And, it fails to provide for an applicable commitment period of sixty months. Accordingly, the plan does not comply with section 1325(b)(4). Confirmation is denied without prejudice to the debtor's right to modify his plan to comply with the terms of this opinion.

### END OF MEMORANDUM OPINION ###